You may proceed. Good morning, counsel. My name is Dave O'Brien. I'm here representing Nicole Klum and Wanda Albright. Their spouse, Wanda, or excuse me, Nicole's spouse and Wanda's son were shot and killed by an officer of the Davenport Police Department. We filed a 1983 case and the district court judge, in an opinion that was thoughtful but we think wrong, granted them qualified immunity. We're appealing that matter, asking the court to reverse that, send the case back for a trial on the merits. The interesting thing I think about this case is that the really operative facts are not in any dispute whatsoever, but when viewed in a reasonable light, particularly in our favor, clearly dictate that qualified immunity should not have been granted. We think the court made both a mistake of law, in terms of what law was applied, and also when these are related, made a mistake of fact in terms of what the incident showed. And by the way, this is an incident where there are dozens of law enforcement officers around. There is full camera views from almost every angle you can imagine, and so that does help keep disputes down because there's really not a lot of arguments about what happened. You can always go to the video and kind of figure it out. But here's what we know. We know that Bobby Klum, and I want to look at this from the perspective of the shooting officer, Officer Roth. Here's what Officer Roth knew. He knew that Bobby Klum, the type of clothing he was wearing, he knew that another officer was pursuing Klum on foot, and he knew that Klum had a gun. That's it. He had no information background about an arrest warrant being executed on, Klum's criminal history, none of that came to light until after the shooting. He knew those three things, and then of course, he's aware of what he observed when he was at the scene, that Bobby Klum was walking around the neighborhood, holding a gun to his head, and he meandered for about 12 minutes. There's a graph in our brief that came from the DCI, where it shows you exactly where, what his route was, and he ended up kind of meandering back to where, to where he started. During this entire 12-minute period, it's undisputed that Klum never moved the gun. He never did anything with it. He never changed demeanor. He never changed the pace at which he was walking. He just continued walking around the neighborhood. He was clearly ignoring orders to drop the gun, but other than that, he took no affirmative action with the gun. He didn't make any comments. He didn't make any aggressive comments. He didn't change his pace. He didn't increase his speed. He didn't decrease his speed. He just was walking around clearly, and I mean, the defendants could argue that he was, that he was just trying to escape, but I think facts read in our favor would establish that he was clearly mentally and emotionally distraught and was contemplating harming himself. That's what Officer Roth would have known. At one point in time, during the incident, earlier, before the shooting, Officer Roth and another officer were standing at the, they call them 9th and a half and 8th and a half street, which are entrances from where I'm from, and he comes walking out of an alley at 9 and a half street on Iowa street, and he's got the gun held to his head, and Officer Roth is, you can look at the video, he's about from me to you, and he's standing there, and he decides not to do anything at that point in time, and he specifically says, he cites the rules that officers are supposed to follow in these cases. He decided to consume cover and create distance, because cover plus distance equals time, and that gives the officers time to deal with these distraught individuals that are threatening to harm themselves. How much does the passage of time matter here? The earlier case we saw was very, very quick. I mean, at least when the person came out here, now we have, as you mentioned it, 12 minutes of meandering around, gun to the head, rubber bullets, I think, fired, didn't phase them. How long were the officers supposed to wait, I guess, before they took action? Maybe the answer is they didn't have to wait, but they shouldn't have fired the gun. I don't know, but I just wanted to ask you. Well, I do believe that the length of time, if you follow the reasoning that I just cited, is in the officer's favor. They've been that create more time. He clearly, in our view, would have been more justified in shooting Bobby Klum as he emerged from the alley on 9 1⁄2th Street than he was a block later, when nobody was within 150 feet of Bobby Klum. He was within 20, 30 feet of him, maybe 40, and he was walking directly at him, which is some of the things that we go back to the case law. The answer to your it takes, there's got to be some conduct, some threatening, menacing act with the gun. So, counsel, let me follow up on that. I know you dispute this, but would you agree that if Mr. Klum was walking towards a group of bystanders or could reasonably be perceived as walking towards a group of bystanders, that lethal force would be reasonable? Well, I think a lot of that depends on the context that Roth knew at the time. This is not an armed robbery. A lot of the cases where they're getting close to bystanders because gunshots have been fired or armed robbery or I think at Ligon's case where a stolen gun was trying to be recovered. So this is none of that. So just walking towards bystanders, I don't think that under Cole or under Partridge, the officer would be entitled to shoot unless he sees him make a movement or some other threatening action. I think that's menacing action. I think that's the rule, regardless of how close he gets to those bystanders. So walking towards a group of bystanders would not be a menacing action? It could be if some of those other factors were present. Had he made threats? Had he fired a gun? Is there somebody over there that they have reason to believe he's dissatisfied with? Just walking towards bystanders alone without any of these other factors, no, it's not sufficient to kill him. And I don't think, I think Partridge holds that way and I think Cole holds that way. So, of course, the problem here is, and this is where this case gets a little bit off kilter because, and we've got this in our briefing and it's at appendix, page 33 of your appendix, and this is the overhead that was done. And the first thing I asked, this is deposition exhibit one. The first thing I asked officer Roth to do is just show me where these people were located that you believed you had to fire because he was going to become intermingled with them quickly enough. And also because he thought one of them could be grabbed as a hostage. And he circled this section at the eight and a half street alley entrance. And of course, we proceeded to review the video and determined that there was nobody in that area. Not only was there no one in that area at the time he fired, no one had been in that area for 15 seconds before he fired. And everybody was not only out of the area, they were 150 feet away. So that's where the mistake of fact comes in from this trial court. Because, and I don't know that the district court used this precise language, but a fair reading of the decision is the menacing act that's required by Cole and by Partridge was the act of him turning and crossing the street and moving directly at these judge Grouse, as you suggested. The problem is he didn't do that. The bystanders were half a block away. Anyone that was in that area, and there were only two of them had already vacated before he started to cross the street. That's all on video. My understanding though, is that there were bystanders there. He didn't walk directly towards them, but they're here and they're walking diagonally. He's walking diagonally. So he's walking, he's getting closer to the bystanders. He's just not taking a map and from the testimony. Yeah, that's, I don't think that's accurate, your honor. In fact, that's why we, because the judge seemed to, the judge found that, the district court found that, which is why we put a protractor over the top of the, of the, of the document, the overhead. Because if you, if you, if you put a protractor over it, you can see that when he turns to cross Iowa street, he's actually walking further away from them than he was if he would have just continued walking straight. It's a difference between, he was walking 90 degrees straight. He needs to talk, if he's going to walk directly at these bystanders, he's got to walk at 68 degrees and he's cutting across the street at 22 degrees. And so he's actually turns to walk further away from them in, from a direction standpoint. And it's pretty clear to me, and I think from a reasonable standpoint of what factors have to be considered, he was heading down this alley. He'd come out of an alley a block before and he was heading down this alley. I mean, he was shot right before he got to the entrance to the alley. And that was one thing I do want to point out. When you're looking at deposition exhibit one, keep in mind, and this may be where Judge Strauss, where you got your, where you got crosswise a little bit. When, when Roth wrote this up, he put Bobby Klum's body on the south side of the alley, further away where he was shot. That's not what happened. That's not where he shot him. He shot him when he was on the north side of the alley, the other side. And so he, he never even got to the point where he was past the alley. It was more of a direct eastward direction across the aisle, slight angle, but more of a direct eastward direction. So what did the officer testify to? I take it from your presentation, there was some facts were inaccurate in your view about the locations. What did he testify about his perceptions or why he, what was the record show about that? Why the officer fired? Well, two things. He fired because he had a mistake. He mistakenly believed there were... Is that what he said though? In other words, what did he say? Well, he said that when I took his deposition, he said there were, there were people in that area that I circled right here. And the video clearly shows no one was at the 150 feet of that area. And so the question then becomes, is that a reasonable, is that a reasonable mistake of fact? And when you're shooting and killing somebody, being 150 feet off doesn't seem to be reasonable. And the district court didn't address this issue, is that correct? Did not address the issue. The district court, the district court said he turned to walk towards these bystanders, which in fact is not what happened. And that was the justification for shooting him. And Roth said, I thought he was going to be, get so close to one of these bystanders, he could have grabbed one of them as a hostage. Well, there was the little girl he talked about was already in the house and the mom was at the door getting ready to walk into the house 150 feet away, a block, a half a block away. So the facts are just not close. So under case law here, Dooley v. Tharp, Locke versus Lickfield, when you're looking at mistakes of fact, you have to determine whether it's reasonable and this was not reasonable. The district court specifically held and made this statement, which I believe is a misstatement of law under the cases I already talked about, Cole and Partridge. Quote, a suspect fleeing arrest while carrying a firearm is reasonably viewed as posing an immediate threat to near my officers and bystanders because it, internal quote, would take only an instant, end of internal quote, for the suspect to point and shoot. And so that finding by the district court is not in compliance with Partridge. It's not in compliance with Cole. He's got to do something. He's got to take some other action with this gun before it's justified in shooting him. Well, doesn't that interpretation by the district court turn an objective test into a subjective test? I think it does. I think it does. And it's not the right application of the test for that reason. I'm just going to briefly mention part of the problem, to answer the second part of your question, part of the problem for Officer Roth is that he was trained to, that action always beats reaction, so you have to shoot first. Now this was improper training in our view. We put a lot of record in the evidence on this. There's a, there's four science institute, these folks that have out there with not applying proper, would never pass muster under D'Albert, proper analysis and they, they're training people and unfortunately the city of Davenport included this training, that action always beats reaction and that's just not true and particularly in this case. And so I do, you are in your rebuttal time, sir. Thank you. Yeah. And so I do think that not only do we need reversal on the individual claim against Roth, but also against the city because they not only failed, they didn't fail to train them. They mistrained him on a proposition that is not supported by science and in violation of federal and state law. Thank you. Mr. O'Rourke. Thank you, your honor. Bobby Joe Klum chose for a long period of time to evade arrest and wander around a residential neighborhood, ignoring multiple commands to stop and drop his gun. He made that decision. Officers attempted to use less than lethal force. It wasn't effective. Bobby Klum then decided to an angle across the street. He didn't have to cross the street. He chose to cross the street to the only area where there were bystanders present. Had he stayed on his side of the street, he would have walked to his house. He crossed the street towards bystanders. That choice by Mr. Klum forced officer Roth to make a split second decision. Use lethal force or gamble. Take a risk with the innocent bystanders life and hope that Mr. Klum, who's not complied yet, drops his weapon. So is there a factual dispute about the bystanders, the location of the bystanders? What's, what's your take on that? My take on it, your honor, is the video clearly shows where they're at. It undeniably shows where they're at. Plaintiff synced video, frankly, I think is the best evidence in this case to demonstrate where all those individuals were at the time. In your view, does that line up, does the video line up with the district court's factual findings? Absolutely. I believe it absolutely does because the nice thing about the video is it shows a lot of different angles. You see when a deputy Grafton, one of the Scott County deputies pulls up that there are a number of people outside, a number, they're all over the place. You see them running up the street away from where all the officers and the Klum are. You see from officer, and then in one lower corner of it, you see the vantage point from Roth's standpoint. And you see officer Roth, officer Jaron, all the others there could see. From that angle, it certainly looks like he's heading towards them. Were they in the press? Let's talk about that. So you're saying it certainly looks like it, but Mr. O'Brien says that in fact, he's actually walking further away from them. Is it your argument that there's a reasonable mistake of fact here? I don't know that you've argued that. I have not argued that, Judge, because I don't think there was a mistake of fact. I think what you have is the viewpoint that you see demonstrates instead of walking up the sidewalk, he was walking or down, he said south, he crossed the street. The other vehicles are up here. Why did he cross the street? We don't know. There was a lot of talk about the protractor and look at this angle versus that angle. Officers in the field don't have an overhead view on a protractor. They have the view of what they see and what the view was from where Officer Roth and their officers were, was an individual crossing the street to the only side where there were bystanders. Throughout this entire 12 minutes, there had been no other bystanders anywhere seen on video. No other bystanders implicated whatsoever. Now my understanding, I just want to understand this, I had sort of motioned, I know we've taken this on audio, but there was something like this. So he's over on this side, bystanders are down here, he crossed over sort of at an angle. Had he kept going, he wasn't walking at the bystanders, he would be walking in their general direction. Is that your understanding? I mean I'm going to go back and look at the record on this. I think that's a fair characterization Judge. He was walking in their general direction and here's what's important. It's undisputed at the time he was shot, he was 148 feet from the closest bystander, 179 feet from the furthest bystander. Plaintiff's own retained expert admits that distance a handgun can kill someone. Up to 300 feet a handgun can kill someone. So Officer Roth is faced with a choice, do I take the do I take the chance that in an instant, Klum pulls the gun down starts shooting? But counsel's making, oh I'm sorry. Isn't that speculation rather than objective observance? Well I think what you're observing is that and I think what this court said. Well what is he observing? He's observing an individual that's now crossing the street. No but you said he might take the gun down and point it and shoot at someone. That's not observed, that's supposition. Well he's observing him walking across the street in the general direction of bystanders with his gun. That's objective. We know from this court's precedent, it only takes an instant to pull down and shoot. Your colleague has suggested that for that to be reasonable though there needs to be something triggering. Something that indicates to the reasonable officer that the status quo, which is not a good situation, has moved into imminent danger. How do you respond to that argument? Well I think the district court properly addressed that because what you have is a situation where in fact as I said no other bystander is ever present and now you have an individual who has been shot and hit. And keep in mind he is walking backwards. When he was shot and hit with the 40 millimeter big rubber bullet, he was walking backwards facing the officers. He's shot and hit. It has no effect. He then turns around walking back down the street to the south and then crosses the street. And what's the relevance in the objective officer analysis about the fact that he was that these less than lethal munitions were applied but weren't effective? Well I think what it shows is this individual is not going to calmly surrender. He has not done it for 12 minutes. He is heading towards bystanders in the general direction. And is it the point where undeniably a shot from his handgun could kill any one of them? Let me try to clarify something. Twice you've just said I believe that this was the first time that there were bystanders in danger. On page 12 of your brief you say that there were people quote there were people in the vicinity the entire time. The entire time of this interaction? The entire time of the whole time he's touring the town. Fair question. No. So those seem to be contradictory to me. Either there were bystanders there the whole time or there weren't. So these bystanders were located in that area where they were the whole time. But his path during this entire 12 minute thing took him in an area where there were no bystanders. He was closer to bystanders at other times in the video than at the end when he was shot. The only time he was closer to bystanders was when he walked across 9th street. And when he walked across 9th street what's important is he has a gun to his head. Bystanders in a car over here. He doesn't look at them. He doesn't make a move to them. He doesn't pay any attention to them. He does not do anything that even acknowledges they're there. Well the reason I ask is I wonder if the city's position wouldn't justify shooting any suicidal person with a gun who refuses to drop the gun if they're within 300 feet of another person. Why is that not the case? That's not the city's position and that's not what happened here. Explain why that's wrong. Explain why your position wouldn't result in that being the law that you can shoot any suicidal person with a gun who's within 300 feet of another person. Fair question. Let's take the assumption that Mr. Klum had sat down in the intersection on the ground not facing bystanders, gun to his head, not moving towards anyone else. I don't think they'd be justified in shooting him. That's not his case. So you're saying the key point then is that he was walking towards bystanders? Absolutely. It was the moment he decided to cross the street. Is that? Well judge I think frankly in all honesty and I think Mr. O'Brien might have just conceded it. At the time Officer Roth was drawn down on him when he came out of the alley force would have been appropriate then because you do have a situation where he has now had multiple. Well he suggests I don't think he said it would have been appropriate but maybe it would have been a closer call in his view. He may not have conceded it but he was pretty close your honor I think but in any event I think Officer Roth would have been justified then because you're in a situation now where you're close and what he did say and I wrote this down as a direct quote. Officer Roth initially followed that training. He followed his training. The training was not to shoot first and ask questions later as he would have you believe later in the argument. The training was back up give it some time. He did that. There were no bystanders, no civilians in danger at that time. That's the key fact in this case. Mr. Klum chose to head towards the bystanders and once he did that it changed the situation. Where is the line between speculation and an objectively reasonable officer? In our case ZJ versus Kansas City Board of Police Commissioners we rejected what we found to be speculation but you're arguing on page 15 Klum could have readily aimed and intentionally struck any of the bystanders with a bullet. Why is that not speculation? Well the case you discussed your honor the flashbang case totally different situation. In that case the officers didn't know who was inside the house. They didn't even know if the subject or the suspect was in the house. They fired flashbangs and went in guns blazing so to speak. This is not that case. Here what we do see is what Officer Roth can observe. We go to the Liggins case. This court said in an instant he can pull it down. The DMOC or DIMOC I repronounce a case that came out the day after Christmas acknowledged that with a knife with a knife. But in that case they had made threats against the grandfather earlier in the day with weapons. They had but the you know the way I read the case part of the discussion was that and I think the way the court phrased it was Kobe did not take a menacing act with a knife but a person at close distance holding a knife even if not directing that blade at another person could still cause serious injury or death in a matter of seconds by repositioning himself. That's entirely consistent with Liggins and that's entirely consistent with our argument that Mr. Klum could have changed things in an instant. So you're saying that a menacing act is not required by our case law? I don't believe so. I think when you look at Liggins when you look at DMOC you don't have to have that. So I go back to my other question then. Why wouldn't it be reasonable to use lethal force anytime someone with the gun is within 300 feet of a bystander? I think it's too broad of a question. I think it could but I guess where I'm hung up judge on your question is when you say anytime they're within 300 feet of a person okay. Well anytime they're suicidal and they refuse to drop a gun. Again it depends on the totality of the circumstances. It's what we always come back to in a situation where you know I might be I could stand here with my back to all of you gun to my head officer behind me and not be a threat to you at that minute because I got to turn around. There's a lot of fact you always have to. I'm just trying to figure out where the line is because it seems that if the if the law is is that anytime someone might or could take a gun and point and shoot at someone that it's okay to use lethal force against them. That's a pretty pretty broad rule. That wouldn't be broad and that's not what I'm advocating for. Again I'm at the facts of this case. They rely heavily upon the Partridge decision but that decision the only Partridge case that had been decided at the time of this incident was solely on the motion to dismiss. At that stage what the court said and the court addressing it on that at the motion to dismiss stage took the facts as pled as true and those facts were a non-resisting non-fleeing minor moved his gun in compliance with commands to drop it. That's the sole case they rely upon to argue their clearly established position here. We don't have that. We have a 37 year old who had been again back to Partridge teenage boy alone in the woods on a riverbank. That's a situation where someone could have been within 300 feet that nobody knew about but he was alone on a riverbank no other bystanders in view. He had not moved towards bystanders and this court accepted as true the argument he was trying to comply. We don't have that here. We don't have an individual trying to comply and it's in fact we have just the opposite. An individual for 12 minutes had multiple opportunities to comply. He didn't. I think the district court's decision was correct with respect to the clearly established we discussed at length the Sok Kong case. Much more on point than Partridge ever will be and Sok Kong if an individual with a knife can be shot running towards people in a car that's a totally different situation. That person did not present nearly the risk that Mr. Klum did. He was 30 feet away from the car, people in the car, you roll up your window, you're safe. Mr. Klum 150 feet away pulls down the gun shoots. They could be dead. Their own expert admits that. The training issue we've discussed in our brief and as we've just heard if Mr. Roth was improperly trained, if Officer Roth was improperly trained, the time to shoot first and ask questions later was when he came out of He didn't do that. He backed off. He exercised his training. He followed his training and used force when he was forced to. That's the case. We believe the district court correctly found Officer Roth's use of force was reasonable. I would ask this court to affirm that decision. Thank you. Let's give two minutes for rebuttal please. Thank you. I believe we got into some really off-base factual claims here that just aren't accurate according to the record. If Bobby Klum would have not been shot, he would have been walking directly down the alley at 8 1⁄2 Street. That's right where he was headed down the alley, not a half a block to the south. Was he crossing the alley? He was on the Roth side of the alley and he was a step or two away from the curb when he was shot. There is a graphic put together by the Iowa Department of Criminal Investigation in our brief that shows that precise location. He was not walking towards these people. They were all a second or two away from completely being behind cover. He wasn't going after them. What is your best case on the clearly established analysis? I mean, what's the best case that clearly establishes the law here? Partridge and Cole both say you can't shoot him unless he points a gun at someone or takes some other menacing action. There is no menacing action here. He wasn't walking towards these bystanders. He didn't increase his speed. He didn't change his pace. He didn't make any threats. He never moved the gun. He turned to walk in a direction further away from the bystanders. That is undisputed in this record, even though the judge found exactly the opposite. What do you do about the case with the knife where they said, oh, you could just repoint and reposition yourself? Seems kind of similar to this case, except we have a gun. Are you talking about Kong? Kong, yeah. Yeah. So in Kong, the problem with Kong and the reason I think it's distinguished, I mean, knife is a bigger threat, but he's acting totally erratically. He's running. He's already been threatening people and he is advancing towards a car that's only 30 feet away. Bobby Klum is doing none of those things. He's walking calmly, collectively. He's exercising his second amendment right. And this is the last point I really want to make for the court is Iowa protects this right. Iowa has a law that in effect puts in place the partridge and the coal holding. And it says that you cannot use deadly force in responding to a person just because they possess a gun. Even if they brandish the gun, it doesn't justify the use of deadly force only if they take some affirmative act to make you think that they're going to use that gun. So we believe this decision needs to be reversed and we need to send it back for a jury trial on the merits. Thank you. Thank you, counsel. The case has been submitted. We will take it under advisement and the court is in recess until tomorrow morning.